## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HENRY MARION and | ) | |
| ERNEST WEBSTER, | ) | |
| | ) | **8:08CV466** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **FINDINGS** |
| | ) | **AND** |
| WERNER ENTERPRISES, INC. and | ) | **RECOMMENDATION** |
| DRIVER'S MANAGEMENT LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the plaintiffs' Motion for Class Certification (Filing No. 34). The plaintiffs filed a brief (Filing No. 35) and an index of evidence (Filing No. 36)[*] in support of the motion. The defendants filed a brief (Filing No. 41) with evidence attached, sealed Exhibit 18 (Filing No. 42), and an index of the previously filed evidence (Filing No. 46) in opposition to the motion. The plaintiffs filed a brief (Filing No. 48*) and an index of evidence (Filing No. 49*) in reply. The defendants then filed a brief (Filing No. 54) with evidence attached in surreply. On August 27, 2009, the parties jointly filed supplemental authority (Filing No. 57, Ex. 1). No additional briefing occurred.

## FACTUAL BACKGROUND

The plaintiffs in this case are former employees of the defendants. The defendant Werner Enterprises, Inc. (Werner) is a transportation and logistics company who operates in all 48 contiguous United States and Canada and is among the five largest truckload carriers in the United States. **See** Filing No. 41 - Ex. 4 Synowicki Aff. ¶ 4. The defendant Drivers' Management LLC (DML) is an affiliated company who contracts with Werner to provide its employee drivers for Werner's vehicles. *Id.* ¶ 5. DML currently employs approximately 9,700 drivers who provide driver services for Werner. *Id.* Between 2003 and 2008, approximately 66,908 different drivers were employed by Werner and paid on a per mile basis. **See** Filing No. 36 - Ex.1(D) Interrogatory No. 27 p. 12-13.

---

[*] The court is unable to create hyperlinks for certain electronically filed documents in this case. Such documents have an * next to the filing number.

Werner uses the Rand McNally MileMaker (MileMaker) system to calculate the number of miles charged to its customers and paid to its drivers for each individual trip. **See** Filing No. 41 - Ex. 4 Synowicki Aff. ¶ 11.   The MileMaker system utilizes pre-determined points in cities to calculate the distance in miles and "determine[s] the shortest route to be taken based upon a network of authorized highways best suited for the commercial trucking industry."  **See** Filing No. 41 - Ex. 24* Koppensteiner Aff. ¶ 5, 7. Therefore, drivers traveling from one point in a city to another point coded in the same city would be calculated as driving zero miles.  **See** Filing No. 36 - Ex.1(E)* Howe Depo. p. 188-189.[1]  It is a standard practice in the trucking industry for companies like Werner to utilize systems such as MileMaker in order to determine freight charges in advance.  **See** Ex. 4 Synowicki Aff. ¶ 11.  Werner has used the MileMaker system for more than twenty years.  **Id.**

Drivers are paid per mile driven based on the miles calculated by the MileMaker system rather than on actual odometer readings.  **See** Filing No. 36 - Ex. 1(E)* Howe Depo. p. 137.  Furthermore, each driver's pay package and subsequent rate of pay per mile differs depending on each driver's experience and other factors.  **See** Filing No. 41 - Ex. 16 Tisinger Depo. p. 71.  There are over 150 pay packages, which apply to the defendants' various fleets and divisions.  **See** Filing No. 41 - Ex. 17 Tisinger Aff. ¶ 6.

All of the defendants' drivers are required to participate in an orientation process upon hire, which process includes a presentation with details about how drivers are paid. **See** Filing No. 41 - Ex. 4 Synowicki Aff. ¶ 10; Ex. 5 - Pay Presentation.  During orientation, Werner provides all drivers a copy of a Driver Handbook, which includes company policies and procedures and other pertinent information, including information concerning driver wages and compensation.  **See, e.g.,** Filing No. 41 - Ex. 10* Marion's Driver's Receipt; Ex. 15* 2007 Driver Handbook.  Until April 2007, the Driver Handbook contained descriptions of several specific driver's pay packages and also stated, "Note:  Miles are based on the Rand-McNally mileage system (the same mileage system used for billing most customers)."  **See _id._** Ex. 17* Tisinger Aff. ¶¶ 5, 7; Ex. 14 2006 Driver Handbook p.

---

[1] Page numbers reference the page number of the exhibit and not the page number of the filing.

WER002346.  After April 2007, specific pay information became available upon request by the drivers "from any terminal, their recruiter or Driver Payroll."  **See** *id.* Ex. 16 Tisinger Depo. p. 68-70; Ex. 15* 2007 Driver Handbook p. WER002492.  Werner eliminated the pay package information from the driver's handbooks because of the large number of different pay packages available.  **See** *id.* Ex. 17* Tisinger Aff. ¶ 7.  Although the April 2007 Driver Handbook does not contain any reference to the MileMaker system, many pay packages reference the MileMaker system as the source of payment per mile.  **See, e.g.,** *Id.* Ex. 15* 2007 Driver Handbook p. WER002492; Filing No. 42 - Ex. 18 Driver Pay Package (sealed). Furthermore, the driver's handbooks after April 2007 include the following excerpt:

> Your cents-per-mile rate depends on how much experience you have and whether that experience was with the Company or with another irregular route 48-state carrier like this Company.  This information will be provided with the written information about your specific driving assignment.  Drivers may obtain their pay information from any terminal, their recruiter or Driver Payroll.

**See** Filing No. 36 - Ex. 1(F)* 2007 Driver Handbook p. WER002492.

Werner utilizes Qualcomm satellite communications to correspond with its drivers. **See, e.g.,** Filing No. 41 - Ex. 1 Marion Depo. p. 98-100.  Drivers are trained on the Qualcomm system during orientation.  *Id.*  Prior to any trip, Werner sends "load dispatch" information to the drivers via the Qualcomm system.  *Id.*  The load dispatch provides details about the specific driving assignment and includes the number of stops, the load origin, the final destination, and the number of miles for which the driver will be paid.  **See** Filing No. 41  - Ex. 5 Pay Presentation p. W002003 to 04; **see also** *id.* Ex. 1 Marion Depo. p. 99.  Generally, drivers also keep a personal log of the miles displayed on the Qualcomm system to compare with pay documents.  **See** Filing No. 41 - Ex. 1 Marion Depo. p. 106-107.


## PROCEDURAL HISTORY

On October 16, 2008, the plaintiffs filed a complaint against the defendants alleging the defendants' drivers are paid for significantly fewer miles under the MileMaker system than if they had been paid based on actual miles driven.  **See** Filing No. 1.  Based on these

allegations, the plaintiffs assert claims for breach of employment agreement, breach of implied covenant of good faith and fair dealing, promissory estoppel, and violations of the Nebraska Wage Payment and Collection Act, NEB. REV. STAT. § 48-1231 (2008). **See** Filing No. 30. The plaintiffs seek relief for alleged failures to pay wages and benefits based upon actual miles driven as allegedly represented to the plaintiffs in written documents including a driver's handbook and at-will employment agreement. **See** *id.* ¶ 46.

The defendants deny violations of state law by virtue of its wage and payment practices. **See** Filing No. 32 - Answer. Specifically, the defendants admit some of the driver compensation pay packages are based, in part, upon the number of dispatched miles a driver travels, but deny they agreed to pay any drivers for actual miles traveled. *Id.* ¶ 21. Furthermore, the defendants assert a number of affirmative defenses including waiver, estoppel and ratification of the compensation system. *Id.* p. 9-10. Finally, the defendants contend no agreement ever existed between the parties that compensation would be based on a driver's actual miles driven. **See** *id.* ¶ 5.

On April 24, 2009, the plaintiffs filed the instant motion requesting class certification to represent other drivers who were compensated based the MileMaker system rather than actual miles driven. **See** Filing No. 34 - Motion. In the motion, the plaintiffs seek certification of a class to be defined as:

> All current and former employees of Defendants who were truck drivers during the applicable statutory period, and who were not compensated on the basis of actual miles driven, but were paid arbitrary and discounted amounts that represented less than the actual miles driven within the scope of their employment.

The plaintiffs argue class certification is proper in this case because the claims arise from the defendants' standard and uniform policies and practices, which economically damaged the plaintiffs by failing to provide compensation for actual odometer miles driven within the scope of their employment. By contrast, the defendants deny class certification is warranted because the plaintiffs fail to adequately define the proposed class, cannot prove the requirements of Fed. R. Civ. P. 23(a), and individualized issues prevail over common issues. On June 12, 2009, the court held an evidentiary hearing on the plaintiffs' motion. The parties relied on the evidence filed with their briefs. The court granted leave for the

4

defendants to file a surreply brief to address issues raised by the plaintiffs for the first time in their reply brief and to supplement the record with a fully legible version of the defendants' Ex. 18.  A transcript (TR.) of the hearing was filed on June 19, 2009.  **See** Filing No. 56.  On August 27, 2009, the parties jointly filed supplemental authority (Filing No. 57, Ex. 1).

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit.  "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met."  *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994) (**citing** *Smith v. Merch. & Farmers Bank of W. Helena*, 574 F.2d 982, 983 (8th Cir. 1978)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a).  The United States Supreme Court has summarized the four basic requirements for class certification as:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied."  *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting** *General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)).  "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.'"  *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing** *Amchem*, 521 U.S. at 614). Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non-class members; (2) the defendants' conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication. **See** Fed. R. Civ. P. 23(b). In addition to the Rule 23(a) and (b) requirements: "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." **See** Fed. R. Civ. P. 23(c)(1)(B). Accordingly, the class must be sufficiently defined so that the class is identifiable. **See** Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981) (discussing potential "difficulty of identifying class members" under some circumstances). In the instant case, the plaintiffs seek to certify a class of:

> All current and former employees of Defendants who were truck drivers during the applicable statutory period, and who were not compensated on the basis of actual miles driven, but were paid arbitrary and discounted amounts that represented less than the actual miles driven within the scope of their employment.

**See** Filing No. 34 p. 1.

The court will review, *seriatim*, each of the requirements the plaintiffs must satisfy with regard to class certification.

## A.    Rule 23(a) Requirements

### 1.    Numerosity

The first prerequisite the plaintiffs must satisfy under Rule 23(a) is numerosity. *Amchem*, 521 U.S. at 613. Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." **See** Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." *United States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted) (stating "as few as 40 class members should raise a presumption

that joinder is impracticable").  "The Eighth Circuit has not established strict requirements regarding the size of a proposed class . . ." *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001) (**citing** *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977)).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class . . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  Typically, the court may rely on the pleadings, however, "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing** *General Tel.*, 457 U.S. at 160).  A court "may consider reasonable inferences drawn from facts before [it] at that stage of the proceedings." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); **see** *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 420 (D. Utah 1998).

In the instant case, there are over 66,000 different drivers who were employed by the defendants between 2003 and 2008, who were paid on a per mile basis.  **See** Filing No. 36 - Ex. 1(D)\* Interrogatory No. 27 p. 12-13.  The plaintiffs argue each of these employees is a potential class member, particularly because the defendants admit from 2003 to 2008 it never paid an employee-driver based upon actual odometer miles, but rather on the mileage calculated through the MileMaker system.  **See** Filing No. 36 - Ex. 1(E)\* Howe Depo. p. 137.  The plaintiffs assert numerosity is satisfied based on the number of potential class members, and because joinder of over 66,000 members would be impracticable.  **See** Filing No. 35 - Brief p. 13-14.  The plaintiffs contend each driver's claim in this case would be relatively small and, accordingly, if potential members were to bring individual lawsuits, judicial resources would be wasted on duplicative lawsuits.  *Id.* Furthermore, the plaintiffs argue a class action is superior to individual lawsuits and will secure consistent, fair and efficient adjudication of the claims.  *Id.*  Although the defendants argue the plaintiffs have not identified putative class members who claim, like plaintiffs, they should have been paid based upon odometer miles, the defendants do not

contest that more than 66,000 employees were similarly paid under the defendants' compensation system during a six-year period.  **See** Filing No. 41 - Brief p. 29-30.

After consideration of the number of persons in the proposed class, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement.  **See *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982)** (certifying class when class members could not individually obtain the declaratory and injunctive relief the class representatives sought).  Based on the considerations for numerosity alone, it is evident a class of over 66,000 would promote judicial economy over individual suits.  Further, even if the proposed class is limited to one or two years, the potential size of the class would likely range in the hundreds or thousands.

### 2.    Commonality

Second, the plaintiffs must prove the element of commonality.  ***Amchem*, 521 U.S. at 613**.  Rule 23(a)(2) requires "questions of law or fact common to the class."  **See** Fed. R. Civ. P. 23(a)(2).  "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'"  ***DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)** (**quoting *Paxton*, 688 F.2d at 561**).  However, "[t]he rule does not require that every question of law or fact be common to every member of the class."  ***Paxton*, 688 F.2d at 561**.  "[T]he commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied."  **In re *Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999)**.

The plaintiffs contend there exist common questions of law and fact because the case arises from the defendants' common and uniform pay practice.  **See** Filing No. 35 - Brief p. 17.  Furthermore, common factual issues exist as to whether the defendants made representations drivers would be paid based on actual odometer miles and whether such representations were incorporated into the employment agreements.  **See** Filing No. 30 - Complaint ¶ 37(c).  The plaintiffs argue all drivers entered into a common form contract and the issue of whether a breach of contract occurred is common to all members.  **See**

Filing No. 48* - Reply Brief p. 3, 14.  Specifically, the named plaintiffs and putative class members all received a Driver Handbook and agreed to certain compensation terms, which referenced "cents-per-mile," but did not define the term as actual (or odometer) miles or reference under the MileMaker system.  *Id.* at 3-4, 14.  The plaintiffs do not rely on oral representations, nor do they argue representations were made other than what is contained in the written documents.  The defendants contend no form contract exists requiring the defendants to pay for actual miles and in order to determine which drivers had the same common understanding as the plaintiffs, the court would have to make inquiries of each driver's individualized understanding of the defendants' representations regarding the payment system.  **See** Filing No. 54 - Surreply Brief p. 2.

The commonality requirement of Rule 23(a) is met when a common question exists, as opposed to the Rule 23(b)(3) requirement that requires common issues to predominate over individual issues.  **See** *In re Am. Med. Sys.*, 75 F.3d 1069, 1084 (6th Cir. 1996). Under the standards of Rule 23(a), the plaintiffs have met their burden of showing common factual issues and legal arguments exist for some of the proposed class members.  The common questions in the instant case arise from the defendants' compensation system and whether representations were made to the plaintiffs for compensation based upon odometer miles.  Based on the plaintiffs' arguments, the individual drivers are identically situated as to written representations made to them by the defendants after the reference to the MileMaker system was removed from the Driver Handbook.  Any employee who received a 2007 or later version of the Driver Handbook was arguably placed in the same position as the plaintiffs with regard to a representation such driver would be paid on a "cents-per-mile" basis without reference to the MileMaker system.  All such employees were subject to the same payment practice, specifically being told they would be paid on a "cents-per-mile" basis without reference to the MileMaker system, but actually being paid using the MileMaker system without regard to actual or odometer miles driven.  This compensation practice, which links the potential class members together, is substantially related to the resolution of the litigation.  Based upon the evidence presented, the commonality requirement has been satisfied only as to the class of new employees who received, as their first Driver Handbook, the April 2007 or later version.

###    3.    Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class.  *Amchem*, 521 U.S. at 613.  Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class."  **See** Fed. R. Civ. P. 23(a)(3).  The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted).  "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citations omitted and alteration in original); **see** *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).  The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff."  *DeBoer*, 64 F.3d at 1174.  However, the plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member.  *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).  Similarly, where there are widely varying circumstances in each individual case impacting alleged liability, the plaintiff cannot show typicality.  **See** *id.*; *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994).

The plaintiffs contend the claims are typical of the whole class because the claims arise from the defendants' standard and uniform compensation practice, which economically damaged each potential class member.  **See** Filing No. 35 - Brief p. 17.  The plaintiffs argue the claims are representative of the entire class because the defendants represented to the potential class members that drivers would be paid "cents-per-mile" based on actual odometer miles.  **See** Filing No. 48 - Brief p. 3, 14.  The plaintiffs contend that since each driver received a Driver Handbook, signed an Employment Conditions agreement, and agreed to the same wage payment terms, the issue of liability for the defendants is the same as to all drivers.  The plaintiffs do not contend any oral promises

or other written agreements exist as evidence of the defendants' compensation representations.

The defendants deny any form contract exists and show they did not consider the Driver Handbook to be a contract between them and the drivers. Filing No. 54 - Brief p. 3; **see, e.g.,** Filing No. 41 - Ex. 15* 2007 Driver Handbook at WER002456. The Driver Handbook states: "The language in the handbook is not intended to create an employment agreement between Drivers Management/Werner Enterprises, Inc. and any employee." **Id.** Similarly, the Employment Conditions agreement does not state how drivers are to be paid except in regard to termination of employment. **See** Filing No. 36 - Ex. F* Employment Conditions between Driver and Drivers Management W000026-W000027. Therefore, neither the Driver Handbook nor the Employment Conditions agreement establish a contract between the defendants and the plaintiffs for compensation based on actual odometer miles. However, the Driver Handbook does inform drivers about how to obtain specific payment information. **See, e.g.,** Filing No. 41 - Ex. 15* 2007 Driver Handbook p. WER002492.

"[A] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." **_In re Milk Prods. Antitrust Litig._, 195 F.3d 430, 437 (8th Cir.1999)** (citing cases). By the same token, it is inappropriate to certify a class "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." **_Hanon v. Dataproducts Corp._, 976 F.2d 497, 508 (9th Cir. 1992)**. However, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." **_Morris v. Wachovia Sec. Inc._, 223 F.R.D. 284, 295 (E.D. Va. 2004)**.

The defendants argue the claims of the class are not typical of the claims of the named plaintiffs by evidencing the different understandings present within the proposed class. The defendants contend some drivers received a Driver Handbook before April 2007, and, therefore, knew about the MileMaker system at the outset of employment. **See** Filing No. 41 - Brief p. 23-24. Even though the written documents are the same for other drivers, the defendants argue those experienced drivers who come to the defendants

understand the industry practice and customs of the standardized mileage system.  **See** Filing No. 41 - Brief p. 23.  Specifically, Marion, one of the named plaintiffs, acknowledged other drivers knew about the MileMaker system.  **See** Filing No. 41 Ex. 1 - Marion Depo. p. 176.  The defendants also argue drivers who requested and received a copy of a pay package that defined "cents-per-mile" based on the MileMaker system, would have received a different representation and would not have the same understanding of the payment system as the plaintiffs.  *Id.*  Accordingly, the timing of when each proposed class-member's learned about the pay system may become important.  Therefore, the defendants contend class certification should be denied since each driver's understanding will have to be individually analyzed prior to establishing whether potential class members have the same claims as the named plaintiffs against the defendants.  *Id.* at 24.

Here, in order for the plaintiffs' claims to be typical of those of the purported class, they must show the actual compensation system differed from the representations made by the defendants.  The plaintiffs fail to show a uniform agreement existed among all class members to provide the basis for typicality of the plaintiffs' claims.  Without such evidence, the plaintiffs are unable to prove such claims are typical for each individual proposed class member.  In this case, the defendants' liability can be ascertained only by conducting individualized inquiries about the understanding of and representations made to each driver about the basis for compensation.  At a minimum, the court would have to undergo individual inquiries into which Driver Handbook each driver received, which drivers received a pay package with reference to the MileMaker system, which drivers came to the defendants with prior knowledge of the compensation system, and which drivers found out about the system during orientation or course of employment.  Because of the highly individualized nature of the liability issue, the named plaintiffs have failed to meet the burden of showing their claims are typical of those of the putative class members, even if the class were limited to those members who received only a post-2007 Driver Handbook.

### 4.    Adequacy of Representation

The fourth prerequisite the plaintiffs must meet under Rule 23(a) for class certification is adequacy of representation.  ***Amchem***, 521 U.S. at 613.  Rule 23(a)(4)

requires "the representative parties will fairly and adequately protect the interests of the class."  **See** Fed. R. Civ. P. 23(a)(4).  "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  ***Paxton***, 688 F.2d at 562 (**citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)**).

The plaintiffs contend they and their counsel will adequately protect the interests of all proposed class members because the named plaintiffs possess the same interest and suffered the same injury as members of the proposed class.  **See** Filing No. 35 - Brief p. 19.  Further, the plaintiffs allege there is no conflict of interest between the named plaintiffs and the prospective class members.  ***Id.***  The plaintiffs argue their counsel are experienced and committed, and will adequately represent the interests of the class.  ***Id.***  The defendants challenge adequacy of representation based on the defendants' contention the class representatives do not have common interests with the proposed class members.  **See** Filing No. 41 - Brief p. 31.

The court has reviewed the evidence presented and finds the plaintiffs' interest in this case is not common to the proposed class members due to the lack of typicality between class members as previously discussed.  Due to the existence of unique defenses and varying circumstances surrounding the proposed class members, the plaintiffs have failed to prove they are adequate representatives of the class.  The court has made no determination about the qualifications or adequacy of the plaintiffs' counsel.

## B.    Rule 23(b)(3) Requirements

For class certification, the plaintiffs must establish this action may be maintained under Rule 23(b)(1), (2), or (3).  ***Amchem***, 521 U.S. at 614.  The plaintiffs have moved to do so under Rule 23(b)(3).  Under Rule 23(b)(3), the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the

13

conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Accounts Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

### 1.     Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (**citing** 7A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1777, 518-19 (2d ed. 1986)).   "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).   The fact that individual defenses may exist does not compel a finding those issues predominate, however, common issues must exist to bind members together to overcome those individual issues.  **See** *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000); *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975).  Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."  7A WRIGHT, ET AL., § 1778.

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.  If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Blades*, 400 F.3d at 562.

The defendants contend class issues do not predominate due to the individual analysis required for each putative class member.  As discussed above with respect to the typicality element the plaintiffs must meet under Rule 23(a), the court finds the issue of whether the defendants' represented to pay employees based on actual miles constitutes the most significant part of the plaintiffs' case.  The plaintiffs have failed to show there is

an essential link among all putative class members with regard to what the defendants represented to each driver and each driver's understanding of the basis for compensation.

Here, the harm complained of cannot be determined by use of blanket analysis on putative class members' employee agreements since no standard written contract exists that supports the named plaintiffs' understanding of pay entitlement.  Specifically, employees hired prior to April 2007, received handbooks referencing the MileMaker system, other employees obtained pay package information referencing the MileMaker system, others had previous knowledge that the MileMaker system was used to determine compensation, and still others may have learned the truth during the orientation or course of employment.  Furthermore, each driver agreed to the number of miles to be paid prior to each trip by accepting the trip through the Qualcomm dispatch.  Therefore, though all drivers were paid according to a similar payment system, the named plaintiffs' understanding of the payment system, and their employee agreements, alone cannot be exclusively used to determine liability against the defendants for all putative class members.  The court would have to make an individual inquiry of each putative class member to determine liability based on the defendants' failure to pay those members who understood "cents-per-mile" to mean actual odometer miles.  Accordingly, the plaintiffs have failed to show class claims predominate over individual issues for the proposed class.

### 2.    Superiority

The second prong of the Rule 23(b)(3) inquiry requires the class action to be "superior to other available methods for the fair and efficient adjudication of the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy but " will create judicial *dis*economy." *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997).

The plaintiffs contend a class action is a superior method of adjudication because the class could number in the tens of thousands, with each member challenging the same

practices and procedures as the defendants. **See** Filing No. 35 - Brief p. 22.    In contrast, the defendants allege a class action in this matter would be unmanageable due to the number of individualized issues. **See** Filing No. 41 - Brief p. 29.    Furthermore, the defendants argue if a class were certified the defendants would be precluded from defending the numerous evidentiary issues in regard to liability, therefore, affecting the defendants' due process rights. **Id.**

In the instant case, the multitude of individual inquiries the court would first have to make prior to determining whether common issues exist, prove such a case would not be efficiently adjudicated as a class action.  The court finds resolution of the claims, at least as to the defendants' liability to each individual proposed class member, through a class action would be, under the circumstances, an inefficient allocation of judicial resources. A class action is not a superior method for resolution of the issues when compared to individual litigation due to the individualized nature of the claims and defenses related to each proposed class member.

### IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:

The plaintiff's motion for class certification (Filing No. 34) be denied.

### ADMONITION

Pursuant to NECivR 72.3 any objection to these Findings and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of these Finding and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 9th day of September, 2009.

                              BY THE COURT:
                               s/ Thomas D. Thalken
                              United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.